**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

David L. Merchant

    v.                                    Civil No. 10-cv-438-PB

New Hampshire State Police
Troop F et al.[1]

**REPORT AND RECOMMENDATION**

Before the Court is David L. Merchant's complaint (doc.

nos. 1 & 4).[2]  Because Merchant is proceeding pro se and in forma

pauperis, the matter is before me to determine, among other

things, whether or not the complaint states any claim upon which

relief might be granted.  See 28 U.S.C. § 1915(a); United States

District Court for the District of New Hampshire Local Rule

---

[1]In addition to the New Hampshire State Police ("NHSP") Troop F,
Merchant has named the following additional defendants in this
action: Darrell Deschenes, Camille Deschenes, the Veterans
Administration, NHSP Capt. Mark Myrdek, Grafton Police
Department Chief Merle Kenyon, Carolann Wooding, Wayne Fortier,
NHSP Trooper William Tibbits, NHSP Sgt. Travis Anderson, NHSP
Sgt. James Steinmetz, Hon. Pamela Albee, Jean Huntoon, Assistant
New Hampshire Attorney General ("AAG") Bud Fitch, AAG Pam
Murphy, the State of Vermont, the Commonwealth of Massachusetts,
the State of New Hampshire, the Psychiatry Department of the
Veterans Administration Medical Center of White River Junction,
Vermont, and Assistant Vermont Attorney General Linda Purdy.

[2]Merchant filed an initial complaint on September 28, 2010 (doc.
no. 1) and an addendum to that complaint on November 5, 2010
(doc. no. 4).  These documents, in the aggregate, will be
considered to be the complaint in this matter for all purposes.

("LR") 4.3(d)(1)(B).  As explained herein, I recommend that this action be dismissed.

### Standard of Review

Under this Court's local rules, when a person commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review.  LR 4.3(d)(1)(B).  In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals). This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon which relief could be granted, the Court must consider whether the complaint, construed liberally, Erickson, 551 U.S. at 94, "contain[s] sufficient factual matter, accepted as true, to

2

'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949

(2009) (citation omitted).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Id.  Inferences reasonably drawn

from the plaintiff's factual allegations must be accepted as

true, but the Court is not bound to credit legal conclusions,

labels, or naked assertions, "devoid of 'further factual

enhancement.'"  Id. (citation omitted).  Determining if a

complaint sufficiently states such a claim for relief is a

"context-specific task that requires the reviewing court to draw

on its judicial experience and common sense."  Id. at 1950

(citation omitted).

Background

Conflicts with the Descheneses

Merchant's complaint is, at best, disordered and difficult

to read, as it does not appear to follow any narrative or state

what claims he seeks to pursue in this Court.  Liberally

construing the complaint, however, as I must at this stage of

the proceedings, I find that Merchant has alleged the following

facts:

Merchant was divorced from Jean McIntosh in 1991 or 1992.

In the course of the divorce proceedings, McIntosh obtained a

permanent restraining order that prevented Merchant from ever seeing his children again.  Merchant states that due to the trauma of losing all contact with his children, he suffers from post-traumatic stress disorder ("PTSD").  The divorce left Merchant with five acres of land in Grafton, New Hampshire.

In 1998, Merchant was having financial difficulties and owed back property taxes on his Grafton property.  Merchant met a man named Darrell Deschenes ("Darrell") through an ad Darrell had placed in an Exeter newspaper seeking to get rid of a junk trailer.  Merchant and Darrell struck a deal: Darrell would give Merchant the junk trailer and Merchant would give half of his property to Darrell, who would pay some of the back taxes and would also pay to subdivide the property.  Merchant states that he deeded the entire property to Darrell because he was, in Merchant's words, "fairly insane at the time."  Merchant expected that Darrell would pay to subdivide the property and give half of it back to Merchant, pursuant to their agreement. Darrell, instead, took out a $15,000 loan using the entire property as collateral.

At some point, Darrell subdivided the property and Merchant reacquired half of the five acres.  Merchant and Darrell have each been living on their respective halves of the property since 1998.  Because of the land dealings, however, bad feelings have arisen between Merchant and Darrell.

Merchant claims that since 2005, Darrell has been illegally burning trash on Darrell's property in an effort to "stick it to" Merchant and to torture him with the burning trash's bad smell.  In addition, Merchant claims that, because there is no running water on his property, Darrell, and members of Darrell's family, go to the bathroom in plastic bags and then burn their excrement, which Merchant claims gives off a terrible odor. Merchant, who rents a port-a-potty for his own use has offered Darrell and his family use of the port-a-potty if they are willing to contribute to the cost of emptying it more frequently, but they have turned down his offers.

In July 2005, Merchant had a physical altercation with Darrell's nephew and the boyfriend of Camille Deschenes ("Camille"), Darrell's daughter.  After that, Camille unsuccessfully attempted to obtain a restraining order against Merchant.  Merchant states that in August 2005, he obtained a restraining order against Darrell, which order, Merchant believes, was the impetus for some of Darrell's ensuing unneighborly behavior.

On November 1, 2008, Merchant and Darrell got into a verbal and physical confrontation over a fire in Darrell's fire pit, because Merchant believed Darrell was burning trash.  During the confrontation, Merchant landed a glancing blow on Darrell's cheek.  Darrell called the New Hampshire State Police ("NHSP").

NHSP Sgt. Travis Anderson came to investigate the incident.
After concluding his investigation, Anderson told Merchant that
he would, over the following several days, prepare a warrant for
Merchant's arrest for simple assault, and would call Merchant so
that he could turn himself in on the warrant.  Merchant alleges
that Anderson threatened to knock down Merchant's door and drag
him out of his house to arrest him if he failed to turn himself
in on the warrant.

     The following day, on November 2, 2008, Merchant called
NHSP Sgt. Cohen to complain about the threat made by Anderson.
Merchant asserts that during this call he got into a verbal
dispute with Cohen.  Merchant's PTSD symptoms were triggered by
the stress of the threat and the phone call, and he began to cry
so hard he had convulsions and his nose started to bleed.  Cohen
sent NHSP Trooper William Tibbits to check on Merchant, who was
suicidal.  Trooper Tibbits did a well-being check on Merchant,
and Merchant agreed to let Tibbits take him to the Dartmouth
Hitchcock Medical Center where he was evaluated, treated, and
released from the emergency department the following morning.

     Merchant states that on June 15, 2010, Camille, claiming
falsely that Merchant had looked into her window, and on the
basis that Merchant had previously assaulted Darrell, obtained a
restraining order against Merchant.  The Descheneses also levied
other complaints against Merchant regarding his inappropriate,

6

disruptive, and aggressive verbal attacks on them.  Merchant states that because the restraining order was in place, the Descheneses continued to burn trash on their property and otherwise attempted to provoke Merchant.  Merchant states that his mental health began to decline when he was served with the restraining order, and has been declining since.  The documents Merchant submitted with his complaint indicate that during the summer of 2010, the NHSP had frequent, and sometimes daily, contact with Merchant as a result of his declining mental health.

On July 14, 2010, Merchant went to court for a hearing on Camille's petition for a restraining order.  When Merchant got to the courthouse, he saw Camille across the parking lot and they made eye contact.  Merchant states that shortly after he walked into the courthouse, he was arrested for violating a protective order for looking at Camille in the parking lot.

On August 14, 2010, feeling he was being persecuted by the Descheneses, Merchant began emailing the NHSP, asking for protection against Camille, in that he believed she was attempting to provoke him to violate the existing restraining order.  Eventually, the NHSP directed Merchant to stop sending emails unless he was specifically asked to do so.  When Merchant complained to the office of the New Hampshire Attorney General,

Trooper Tibbits was sent to Merchant's home to tell him to stop sending emails to the NHSP.

Merchant asserts that he was able to buy a new mobile home in 2009, but after nine months of use, the Descheneses effectively drove him off of his property. Merchant states that as a result of the Descheneses's behavior, he does not live on his property, but is staying at a rooming house in Manchester, "in terror of going back to certain death."

Mental Health Treatment

Merchant states that he sought treatment from 1998-2007 from the Veterans Administration Medical Center in White River Junction, Vermont ("VA-WRJ"). Merchant asserts that the VA-WRJ staff improperly failed to diagnose him with mental illness. Instead, Merchant claims that the staff there accused him of being drunk, although, Merchant states, he has been sober since 1975. Merchant claims the symptoms he presented with at the VA-WRJ, which were dismissed by staff there, were due to PTSD and depression.

In 2007, Merchant went to the walk-in psychiatric clinic at the Veterans Administration in Manchester ("VA-M"). There, Merchant states, he was evaluated promptly, and saw a doctor who diagnosed him with PTSD and prescribed medication for him. Merchant has attached to his complaint a letter from his treatment provider at the VA-M indicating that she first saw

8

Merchant in the summer of 2008, and that he has been diagnosed with, and is receiving treatment for, PTSD, Mood Disorder, and Delusional Disorder (Paranoid).  Merchant has not obtained remission, and continues to experience symptoms that, when they are exacerbated by stress and become more acute, can require additional treatment.

Merchant asserts generally that the States of Vermont and New Hampshire, and the Commonwealth of Massachusetts, are responsible for extreme emotional cruelty against him.  Merchant believes that these entities have colluded with his ex-wife to have him tortured and killed by taking advantage of his mental illness to drive him to suicide.  Merchant also accuses most of the defendants named in this lawsuit of either trying to kill him, being indifferent to his mental suffering, or trying to force Merchant to kill himself.  While the complaint is short on specifics as to these assertions, Merchant does state that Trooper Tibbits has, in the past, failed to take Merchant's mental illness and suicidal intentions seriously, and that the Descheneses and the NHSP Troopers have assassinated his character and exacerbated his mental illness.  Specifically, Merchant claims that Darrell and Camille falsely tell people that Merchant is a pedophile.[3]

---

[3]Merchant concedes that he is a convicted sex offender, but states that his victims were elderly women, not children.

Claims

Merchant does not state, in his complaint, what specific factual or legal claims he seeks to raise or what relief he seeks.  After generously considering the allegations in his complaint, however, it appears that Merchant intends to raise the following claims[4]:

1.   Claim Against the VA-WRJ:  One or more individuals at the VA-WRJ committed the tort of malpractice by failing to adequately consider his symptoms, resulting in a failure to properly diagnose Merchant's mental illness for nine years.

2.   Defamation: Darrell and Camille Deschenes have committed the tort of defamation by falsely telling many people that Merchant is a pedophile.

3.   Claims Against NHSP, individually named NHSP Troopers, AAGs Fitch and Murphy, and Assistant Vermont Attorney General Purdy: Merchant generally asserts that these defendants have mistreated him by ignoring him, refusing to help him, and/or verbally threatening him.

4.   Neighbor Dispute: Merchant claims that the Descheneses have violated his property rights in a variety of ways since 1998.

---

[4]The claims, as identified herein, will be considered to be the claims for all purposes.  If Merchant disagrees with the claims as identified, he must do so by properly objecting to this Report and Recommendation or properly moving to amend his complaint.

10

<u>Discussion</u>

I.   <u>Federal Tort Claims Act</u>

Merchant has sued the VA-WRJ seeking relief for a failure
to properly treat him.  In short, he seeks to raise a negligence
claim against a federal agency and, presumably, individuals
employed by that agency.  The United States and its agencies are
generally immune from civil liability.  See <u>Roman-Cancel v.</u>
<u>United States</u>, 613 F.3d 37, 41 (1st Cir. 2010).  With respect to
private tort actions against the United States, however, the
Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) & 2671, <u>et seq.</u>
("FTCA") constitutes a waiver of that immunity, subject to
certain limitations.  See <u>id.</u>  A medical malpractice claim
levied against the Veterans' Administration, a federal agency,
is generally actionable under the FTCA.  See <u>Roman-Cancel</u>, 613
F.3d at 41.

The FTCA, however, imposes certain time limits within which
claims must be brought.  See <u>id.</u>  Specifically,

> [a] tort claim against the United States 'shall
> be forever barred unless it is presented in
> writing to the appropriate federal agency within
> two years after such claim accrues or unless
> action is begun within six months after the date
> of mailing . . . of notice of final denial of the
> claim by the agency to which it was presented.'

<u>Id.</u> (quoting 28 U.S.C. § 2401(b)).  Compliance with the time
limitations contained within the FTCA is both mandatory and
jurisdictional.  See <u>Roman-Cancel</u>, 613 F.3d at 42.

11

Merchant alleges that he was seen at the VA-WRJ between
1998 and 2007, and that during that time, no one ever diagnosed
him properly or took his complaints seriously.  Nothing in the
record suggests that Merchant ever filed a grievance or
complaint with the Veterans Administration, or that he received
an adverse final determination from that agency, much less that
any such grievance, if filed, was timely.  Accordingly, Merchant
has failed to demonstrate that he has satisfied the exhaustion
and timeliness jurisdictional requirements of the FTCA.  I
therefore recommend dismissal of this claim, and the VA-WRJ,
from this action, as Merchant has failed to plead sufficient
facts to establish this court's subject matter jurisdiction over
the claim.

II.  Claims Alleging Defendant Troopers and Other State Actors
     Threatened and/or Ignored Merchant

Merchant claims that the NHSP defendants and attorneys Bud
Fitch and Pam Murphy of the New Hampshire Attorney General's
Office either threatened Merchant in some way or failed to take
action when he requested that they do so.  Merchant alleges only
verbal threats and an attitude of indifference by defendants
here.  He does not assert that he was ignored by defendants at
any time when he was in actual physical danger.  In fact, the
documents submitted with the complaint indicate that once
Merchant's mental health issues became acute, the NHSP

defendants had at least daily contact with Merchant, conducting
well-being checks in particular, and that when Merchant did
become suicidal, they responded and drove him to the emergency
room.

A claim alleging that individuals acting under color of
state law, such as law enforcement officers, have violated his
constitutional rights may be actionable under 42 U.S.C. § 1983.
Verbal threatening by law enforcement officers, however, does
not rise to the level of a constitutional violation.  See Brown
v. Sweeney, 526 F. Supp. 2d 126, 131 (D. Mass. 2007) (quoting
Nagy v. Town of Andover, Civ. No. 01-112-M, 2001 WL 1326684 *2,
*6 (D.N.H. Oct. 19, 2001)).  Because Merchant's assertions of
disrespectful or dismissive behavior do not give rise to a
constitutional violation or other federal cause of action, I
recommend that they be dismissed.

III. Private Defendants

Merchant has sued three private individuals in this action:
Darrell, Camille, and Carolann Wooding of the New Hampshire Bar
Association.[5]  The United States Constitution "erects no shield
against merely private conduct, however . . . wrongful."  Blum
v. Yaretsky, 457 U.S. 991, 1002 (1982).  A plaintiff claiming an

_____

[5]It is not clear exactly how Wooding harmed Merchant, but it
appears that Merchant, without alleging specific facts, may be
somehow attempting to fault her for failing to assist him in his
state legal proceedings.

infringement of his civil rights by individual defendants must

establish that (i) the defendants deprived plaintiff of a right

secured by the Constitution or laws of the United States, and

that (ii) the defendants acted under "color of any statute,

ordinance, regulation, custom, or usage, of any State or

Territory of the District of Columbia."  42 U.S.C. § 1983; see

Andresen v. Diorio, 349 F.3d 8, 13 (1st Cir. 2003).  In relation

to the second requirement, a private actor can be held to be a

state actor only under limited circumstances, none of which are

present here.  See Blum, 457 U.S. at 1004 (describing

circumstances under which private defendants can be treated as

state actors for purposes of § 1983 liability); see also Jackson

v. Metro. Edison Co., 419 U.S. 345, 357 (1974).  Because

Camille, Darrell, and Wooding are private individuals and not

state actors, no federal civil rights claim or other federal

cause of action arises out of their conduct as described here,

and I recommend dismissal of those defendants from this action.

IV.   Immune Defendants

     A.    Judicial Immunity

     Merchant alleges that two New Hampshire state judges, the

Hon. Albert Cirone and the Hon. Pamela Albee, and a state

District Court clerk, Jean Huntoon, violated his civil rights by

failing to grant appropriate relief or assistance to him in the

restraining order proceedings between Camille and himself.

Judges have absolute immunity from a suit for monetary damages

for harm allegedly incurred as a result of their judicial acts.

See Stump v. Sparkman, 435 U.S. 349, 359 (1978).  "This immunity

applies no matter how erroneous the act may have been, how

injurious its consequences, how informal the proceeding or how

malicious the motive."  Beck v. Plymouth Cnty. Super. Ct., 511

F. Supp. 2d 203, 206 (D. Mass. 2007) (citing Cleavinger v.

Saxner, 474 U.S. 193, 199-200 (1985)); Cok v. Cosentino, 876

F.2d 1, 2 (1st Cir. 1989).  This immunity shields any judge or

judicial officer, including a judge's clerk, from suit.  See

Slotnick v. Staviskey, 560 F.2d 31, 32 (1st Cir. 1977) (holding

that absolute immunity applies to judge's clerk).  Absolute

immunity applies to any normal and routine judicial act

committed within the Court's jurisdiction.  See Stump, 435 U.S.

at 359.  Accordingly, to the extent that Merchant seeks to sue

judges Albee and Cirone, or Clerk Huntoon, for failing to treat

him appropriately or assist him properly during the restraining

order proceedings described, they are immune from suit, as there

is no suggestion in the record that they acted beyond their

respective jurisdictions with regard to the restraining orders.

I therefore recommend that Albee, Cirone, and Huntoon be

dismissed from this action.

15

B.    Eleventh Amendment Immunity

Section 1983 suits for damages against states, state
agencies, or state officers in their official capacities are
barred by the Eleventh Amendment, unless the state has expressly
waived immunity.  See P.R. Aqueduct & Sewer Auth. v. Metcalf &
Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a
state nor agencies acting under its control may be subject to
suit in federal court); Negron-Almeda v. Santiago, 579 F.3d 45,
52 (1st Cir. 2009) (citing Wang v. N.H. Bd. of Reg. in Med., 55
F.3d 698, 700 (1st Cir. 1995)).  Because I find that the
Eleventh Amendment renders Massachusetts, Vermont, and New
Hampshire immune from suit, I recommend those state defendants
be dismissed from this action.

V.    State Law Claims

A.    Defamation

Merchant alleges that he has been subjected to "character
assassination," or defamation, by Darrell and Camille.  Under
New Hampshire law, "to establish defamation, there must be
evidence that a defendant published a false and defamatory
statement of fact about the plaintiff to a third party."  Moss
v. Camp Pemigewassett, Inc., 312 F.3d 503, 507 (1st Cir. 2002)
(quoting Indep. Mech. Contractors, Inc. v. Gordon T. Burke &
Sons, Inc., 138 N.H. 110, 118, 635 A.2d 481, 492 (1983)) (other
internal citations omitted).  "A statement is defamatory if it

16

'tends to lower the plaintiff in the esteem of any substantial and respectable group of people.'" Moss, 312 F.3d at 507 (citing Nash v. Keene Publ'g Corp., 127 N.H. 214, 219, 498 A.2d 348, 351 (1985)). Merchant has alleged that the Descheneses have made false, defamatory statements about him — that he is a pedophile – and that they have repeated that statement to numerous people. Such facts may give rise to a claim of defamation under New Hampshire law.

B.   Nuisance

In addition, Merchant has alleged facts that may give rise to a claim of a private nuisance under state law, with respect to the Descheneses' open burning of waste. See, e.g., Cook v. Sullivan, 149 N.H. 774, 780, 829 A.2d 1059, 1066 (2003) ("'A private nuisance exists when an activity substantially and unreasonably interferes with the use and enjoyment of another's property.'" (citation omitted)). "To constitute a nuisance, the defendants' activities must cause harm that exceeds the customary interferences with land that a land user suffers in an organized society, and be an appreciable and tangible interference with a property interest." Id.

Merchant's claims of defamation and nuisance are all state law claims that do not present any federal questions or otherwise provide any basis for this court's exercise of original jurisdiction. Because Merchant's complaint raises no

cognizable federal claims, this Court should not exercise supplemental jurisdiction over these state law claims, see 28 U.S.C. § 1367(c).  Therefore, I recommend that the state law claims be dismissed without prejudice to refiling in a court of competent jurisdiction.

## Conclusion

I find that Merchant has not alleged any cognizable claims against any defendant amenable to suit in this Court in this matter.  Accordingly, I recommend that the complaint be dismissed in its entirety.  See LR 4.3(d)(1)(B)(i).

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008).

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  December 16, 2010

cc:  David L. Merchant, pro se

LBM:jba

18